**E-Filed** 10/22/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PACIFIC SHINFU TECHNOLOGIES CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>PINNACLE RESEARCH INSTITUTE, INC., PRIDTRONICS, INC., and K.C. TSAI,<br><br>Defendants. | No. C-00-21034 RMW<br><br>ORDER FINDING DEFENDANTS IN CONTEMPT OF COURT<br><br>[Re Docket Nos. 35, 43, 46, 51, 53, 54] |

On June 23, 2005, this court issued an order to show cause why the defendants Pinnacle Research Institute, Inc. ("PRI") and K. C. Tsai should not be held in contempt of this court's preliminary injunction filed January 10, 2001 based upon their transfer of patent number 124145 issued by the Taiwan Intellectual Property Office (" '145 patent"). Evidentiary hearings were held on November 18, 2005 and January 6, 2006.[1] For the reasons set forth below, the court find both defendants acted in contempt of the preliminary injunction.

---

[1] The court apologizes for the delay in issuing this order. The docket mistakenly reflects that the file was closed on June 23, 2005, the date the order enforcing the arbitration was entered.

ORDER FINDING DEFENDANTS IN CONTEMPT OF COURT—No. C-00-21034 RMW
JAH/WH

# I. FINDINGS OF FACT

A. In November 1998, plaintiff Pacific Shinfu Technologies Co., Ltd.,[2] ("Pacific") and defendants Pinnacle Research Institute, Inc., ("PRI") and Pridtronics, Inc.,[3] entered into an agreement ("Patent Purchase Agreement") for plaintiff to purchase a certain portfolio of patents and patent applications from defendants. This portfolio of patents is listed on Exhibit 1 to the Patent Purchase Agreement and included patent no. 5,980,977 ('977 patent).

B. Plaintiff filed suit in this court against the two corporate defendants and K.C. Tsai in October 4, 2000 ("subject lawsuit"). On November 7, 2000 the court restrained defendants from "selling, transferring or otherwise transferring ownership of any interest in the '977 patent."

C. On January 10, 2001, the court granted plaintiff's motion for a preliminary injunction, enjoining defendants and those acting in concert with them "from selling, licensing, or otherwise transferring any interest in any of the patents or patent applications . . . described in Exhibit 1 of the Patent Purchase Agreement. Taiwanese Patent No. 124145 (the '145 patent) is the Taiwanese patent issued on the same technology as the '977 United States patent. The parties do not currently dispute that the subject patents are covered by the Patent Purchase Agreement.

D. After issuing its preliminary injunction on January 10, 2001, the court stayed the subject lawsuit pending arbitration before the Arbitration Association of the Republic of China[4] between Pacific on one side and PRI and Tsai on the other. Said arbitration began in September 2000.

E. On January 24, 2001 the Arbitration Association issued its Arbitral Award and found that the Patent Purchase Agreement covered a number of patents and patent applications, including those in Exhibit 1 of the Patent Purchase Agreement and the '977 patent.

---

[2] Pacific Shinfu, the original plaintiff, has apparently been merged into Ultracap Technologies Corporation, and this court substituted Ultracap as plaintiff on June 23, 2005. As the name of the plaintiff is not material to this motion, the court will, for the sake of simplicity, refer to the plaintiff as "Pacific."

[3] Defendants claim that Pridtronics has been dissolved and that efforts to ascertain its continued existence have been unsuccessful.

[4] "The Republic of China" is the formal name of the island of Taiwan and its associated smaller islands. It should not be confused with the People's Republic of China, the large country on the mainland.

1   F. On April 24, 2001 patent certificate no. 124145 was issued to PRI by the Taiwanese
2   Patent Office. Notification was sent to PRI on April 26, 2001 that certificate no. 12415 had issued
3   pursuant to application no. 86114329 (" '329 application').
4   G. On May 10, 2001, K.C. Tsai, on behalf of PRI, executed a power of attorney appointing
5   S. C. Hsu as PRI's attorney for PRI's patent applications.
6   H. On an unidentified date, K. C. Tsai on behalf of NETC, executed a power of attorney
7   appointing S. C. Hsu as NETC's attorney for NETC's patent applications.
8   I. On June 12, 2001 NETC, by its attorney-in-fact S. C. Hsu, applied to the Taiwanese
9   Patent Office to correct the number of patent application no. '329.
10   J. On July 1, 2001 K. C. Tsai was elected Chairman of the Board of NETC.
11   K. On October 12, 2001 a Patent Recordation Application Form was filed with the
12   Taiwanese Patent Office requesting approval of the assignment recordation of the '329 application
13   with PRI as transferor and K. C. Tsai as its legal representative and National Energy Technology
14   Co., Ltd. as transferee and K. C. Tsai as its legal representative.
15   L. On November 1, 2001 the Taiwanese Intellectual Property Office issued patent certificate
16   no. 124145 to NETC.
17   M. In November of 2003, Pacific (Ultracap) filed a suit in Taipei against NETC to recover
18   the '145 patent, which plaintiff alleges was listed in Exhibit 1 and was transferred to NETC by
19   defendants after January 10, 2000. On July 19, 2005 the Taiwan Taipei District Court rendered its
20   decision and held, among other things, that "the denial of the defendant (Tsai and NETC) that the
21   plaintiff (Ultracap formerly Pacific) acquired the patent right of the disputed patent cannot be
22   sustained." Cheung Decl., Ex. C (English translation of *Ultracap Techs. Corp. v. Tsai*, 92 Nian Du
23   Zhi Zi 86, (slip op. July 27, 2005)) at 12-13. The court commented:

> The plaintiff once issued a letter to the defendant, NETC, on June 20, 2001, informing the defendant company that the disputed patent is owned by the plaintiff and the court in the US issued the provisional injunction order to forbid American PRI from transferring the relevant right with respect to the Ultra-capacitor patent, which is proved by the receipt confirmation, signed by the employee personally of the defendant, NETC, which is offered by the plaintiff. After receiving the lawyer letter issued by the plaintiff and provisional injunction order of the court in the US, after ten days (i.e., July 1, 2001) the defendant, NETC, however, chose the defendant, KEH CHI TSAI, as the chairman of board and afterwards on October 12, 2001, the defendant, KEH CHI TSAI, represented the defendant, NETC, to file the application

> for transfer registration in Taiwan with respect to the disputed patent. At that time representing American PRI to transfer the disputed patent right to the plaintiff and signing as the representative is also KEH CHI TSAI. Therefore, the defendant, KEH CHI TSAI, represented American PRI to transfer the disputed patent right to the plaintiff in the beginning, and later used the double status as the representative of American PRI and the defendant, NETC, to maliciously register to transfer to the defendant, NETC the disputed patent right that belongs to the plaintiff. Obviously he recklessly uses the appearance of juristic person that has the status of independent juristic person character to cause the transfer registration to "the third party" but actually to gain the effect of handing over from the left hand to the right hand. At this time the defendant, NETC, to whom the transfer is registered, can not be "the third party" so called in Article 59 of the Patent Law. The above-mentioned defense of the defendant cannot be adopted. The allegation of plaintiff that it owns the patent right with respect to the patent of ROC invention numbered 124145 has its legal ground.

*Id.* at 12.

N. In March 2005, plaintiff filed in this court a motion to hold defendants PRI and K.C. Tsai in contempt of court for violating the injunction by transferring the '145 patent and related patent applications to NETC.

O. In June 2005, this court enforced the arbitration award and lifted the stay on this case. Neither of those requests was opposed. The court also ordered defendants Tsai and PRI to show cause why they should not be held in contempt of court for violating the 2001 preliminary injunction.

## II. ANALYSIS AND CONCLUSIONS OF LAW

### A. The Doctrine of Laches Does Not Bar Plaintiff from Moving to Hold Defendants in Contempt

As a threshold issue, defendants contend that plaintiff's contempt motion should be denied based on the doctrine of laches because plaintiff brought the claim more than four years after the issuance of the preliminary injunction and the alleged violation. Defendants claim that during the four years "defendants have conducted numerous transactions and experienced many changes in their business" and that plaintiff's "unreasonable and inexplicable" delay has placed K.C. Tsai in the "impracticable" position of recollecting the timing and circumstances of the transfers. Defendants also point out that billing records for Pacific's counsel reveal that Pacific began researching a motion for contempt in 2001 and periodically reconsidered the matter.

Plaintiff puts forth several reasons for the alleged delay: (1) it did not discover the alleged transfer until late 2001; (2) the case was stayed pending arbitration in Taiwan; (3) Pacific did not

begin its manufacturing process until December 2002 and thus did not have a need to seek to ensure its exclusive rights to the patents until then; and (4) Pacific filed an action in Taiwan in November 2003 to recover the transferred patents. Plaintiff further contends that defendants have not shown prejudice caused by the delay. Plaintiff also argues that laches is not applicable to this case because "the customary application of the doctrine is in the context of an initial filing of a claim" whereas this case involves filing a motion in a case that has been stayed. Thus, plaintiff contends that the proper inquiry is "whether the plaintiff failed to prosecute the action."

"To establish laches a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). "Mere passage of time cannot constitute laches, but if the passage of time can be shown to have lulled [the] defendant into a false sense of security, and the defendant acts in reliance thereon, laches may, in the discretion of the trial court, be found." *Citizens For Lawful & Effective Attendance v. Sequoia Union High School Dist.*, 1998 WL 305513, at *4 (N.D. Cal. 1998); *see Dolby v. Robertson*, 654 F. Supp. 815, 821 (N.D. Cal. 1986); *Whitman v. Walt Disney Prods., Inc.*, 263 F.2d 229, 231 (9th Cir. 1958).

Assuming laches is applicable in the context of filing a motion in a stayed case, the court finds that it does not bar Pacific from asserting contempt in this case. First, the four-year delay is not unreasonable given the facts that Pacific Shinfu had been actively involved in an arbitration and a litigation in Taiwan that were based on the same subject matter while this case was stayed. Second, defendants have not shown prejudice caused by the delay except the alleged forgetfulness of K.C. Tsai. However, regardless of the lapse of time from the issuance of the injunction, defendants were under a constant duty to obey this court's order not to transfer certain patents or patent applications. Furthermore, defendants could not reasonably have been "lulled" into "a false sense of security" by plaintiff's delay because the parties were involved in arbitration or litigation arising out of the same subject matter as that of this motion—the alleged transfer of the patents or patent applications in Exhibit 1.

**B. Defendants Are in Contempt of Court**

**1. Legal Standard**

1     Pacific limited its claim that defendants violated the court's preliminary injunction to the
2 alleged transfer, or attempted transfer, of the '145 patent.  Pacific also withdrew any damage claim
3 related to the alleged contempt except for its claim for reimbursement of the attorney's fees it
4 incurred as a result of the alleged contemptuous conduct.

5     "Civil contempt occurs when a party fails to comply with a court order." *Gen. Signal Corp.*
6 *v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986).  "In a civil contempt proceeding, the
7 contempt must be proved by clear and convincing evidence." *Vertex Distrib., Inc. v. Falcon Foam*
8 *Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982).  "This requires more than does the preponderance
9 of the evidence standard applicable to most civil cases." *Id*.  The contempt "need not be willful,"
10 and there is no good faith exception to the requirement to obey a court order.  *In re Crystal Palace*
11 *Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987).  "But a person should not be held in
12 contempt if his action appears to be based on a good faith and reasonable interpretation of the court's
13 order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)
14 (internal quotation marks and brackets omitted).  In this case, Pacific must prove by clear and
15 convincing evidence that PRI or K. C. Tsai assigned or otherwise transferred an interest in the '145
16 patent after January 10, 2001.

17         **2.     Evidentiary Issues**

18     The key documents offered by defendants purport to be documents obtained by Pacific in
19 response to a letter it sent to the Taiwanese Intellectual Property Office.  The Office's response is on
20 what appears to be its official letterhead and is signed on behalf of the Chief of the Information
21 Service Division.  It attaches the requested documents but there is no certification.  Defendants
22 argue that the documents are not adequately authenticated and constitute hearsay.  The court is
23 satisfied that neither objection should be sustained.  With respect to the authentication objection, the
24 traditional method for authenticating foreign documents is to have a certification from an
25 appropriate foreign official.  Federal Rule of Evidence ("FRE") 902(3).  However, Rule 902(3) also
26 provides that if reasonable opportunity has been given to all parties to investigate the authenticity
27 and accuracy of official documents, the court may, for good cause shown, dispense with the
28 certification requirement.  In addition, FRE 901(a) provides that "[t]he requirement of authentication

1  or identification as a condition precedent to admissibility is satisfied by evidence sufficient to
2  support a finding that the matter in question is what its proponent claims." Specifically, under FRE
3  901(b), records of the type in question are sufficiently authenticated if they are from the public
4  office where items of their nature are kept. *See Vatyan v. Mukasey*, 508 F.3d 1179, 1182-83 (9th
5  Cir. 2007). In the present case, the testimony by Wang as to how he obtained the documents from
6  the Intellectual Property Office, the fact that the response from the Office reflects its seal and
7  encloses documents of the type requested and the fact that the documents appear to be legitimate are
8  sufficient indications of trustworthiness to satisfy the authentication and hearsay objections. In
9  addition, as to the hearsay objection, FRE 803(8) allows public records reflecting the activities of an
10 office or agency, or matters observed pursuant to duty imposed by law as to which matters there was
11 a duty to report. The records involved fall within the description of the type admissible under FRE
12 803(8).

### 3. Defendants' Contemptuous Conduct

14 Whether or not the findings from the Taiwanese arbitration and district court proceedings are
15 considered, it appears clear that defendants participated in a transfer, or attempted transfer, of the
16 subject patent after January 10, 2001 in violation of Pacific's rights and the terms of the preliminary
17 injunction. Although Pacific admits it does not know when the '145 patent was actually assigned to
18 NETC, Tsai and PRI actively took action to accomplish or at least document a transfer to NETC
19 after the injunction was issued. On April 24, 2001 Tsai and PRI were on notice that the '145 patent
20 had issued. Nevertheless, shortly thereafter, Tsai appointed Hsu to prosecute patent applications for
21 PRI. On October 12, 2001 Tsai as legal representative of both PRI and NETC submitted a patent
22 application recordation form requesting approval of the assignment recordation of the '329
23 application. The application shows PRI as transferor and NETC as transferee. Whether the actual
24 assignment of the subject technology from PRI to NETC took place before or after January 10, 2001,
25 PRI and Tsai's actions to at least perfect or document the transfer took place after January 10, 2001.
26 Tsai's claim made at the hearing on January 10, 2006 that the subject patent was "carved out"
27 of the contract between PRI and NETC was not credible. A "carve out" would be inconsistent with
28 the positions taken by PRI in the arbitration and NETC in the Taiwanese district court proceedings.

Further, back on November 22, 2000 K. C. Tsai signed a declaration in which he stated that on July 28, 2000 the '977 patent was transferred to Yu Cheng Metal Industrial Co., LTD of Taiwan and that he is informed and believes that the patent was then transferred by Yu Cheng to National Energy Technology Co., LTD.  Tsai further disputed that any of the material patents, including those transferred to Yu Cheng, had been previously transferred to Pacific.  On May 6, 2005 Tsai signed a declaration in this action claiming he did not recall the transfer of the interest in patent application no. 86114329 and had no recollection of the circumstances of the transfer.  Although Tsai presented two documents purporting to substantiate the termination of the transfer of the subject patent to NETC, the court does not find them convincing in light of the inconsistencies in Tsai's testimony.

For the foregoing reasons, the court finds PRI and Tsai in contempt of this court's January 10, 2001 order based upon their transferring, or perfecting of the transfer of, the '145 patent to NETC after the date the preliminary injunction was issued.

**C. Sanctions for Contempt**

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376,1380 (9th Cir. 1986). Here, there is nothing to coerce since the defendants have been ordered to make the appropriate transfers pursuant to the arbitration award and presumably have done so. Therefore, Pacific may only recover, in the court's discretion, the attorney's fees necessitated by defendants' contumacy, in other words fees to make plaintiff whole. *See Harcourt Brace Jovanovich Legal and Professional Publications, Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994). Any request by Pacific for attorney's fees must be filed within fourteen days of the date of this order and in accordance with Civil Local Rule 54-6. Pacific should also file a declaration explaining how it has segregated and computed its fee request so that only those fees necessitated by defendants' contemptuous acts are included. Defendants may respond within seven days of any timely filing by plaintiff.

Dated:    10/14/08

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

**A copy of this order was mailed on      10/22/08      to:**

**Counsel for Plaintiffs:**
James B. Nebel
Flynn Delich & Wise
One California St Ste 350
San Francisco, CA 94111
(415) 693-5566

**Counsel for Defendants:**

Frank H. Russow
Attorney at Law
1195 Main Street
Santa Clara, CA 95050

J. Joseph Wall, Jr.
Korda Johnson & Wall LLP
66 E. Santa Clara Street
Suite 250
San Jose, CA 95113

Counsel are responsible for distributing copies of this order to co-counsel, as necessary.