**United States District Court**
For the Northern District of California

**E-FILED on** __07/18/09__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PACIFIC SHINFU TECHNOLOGIES, CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> PINNACLE RESEARCH INSTITUTE, INC., a corporation, PRIDRTRONICS, INC., a corporation, and K.C. TSAI, an individual, <br><br> Defendants. | No. C-00-21034 RMW <br><br><br> ORDER AWARDING ATTORNEYS' FEES AND COSTS <br><br> **Re Docket No. 70** |

Plaintiff Pacific Shinfu Technologies, Co., Ltd., ("Pacific") moves for attorneys' fees and costs. For the reasons set forth below, the court hereby awards fees and costs in the amount of $80,874.49.[1]

## I. BACKGROUND

The facts leading to this court's finding of contempt are summarized in the court's Order Finding Defendants in Contempt of Court. (Docket No. 69). As a result of defendants' contempt of this court's preliminary injunction, plaintiff seeks a total in fees and costs of $134,927.64 (Pl.'s Mot.

---

[1] The court had thought that this order had been issued months ago, but it does not appear on the docket.

ORDER AWARDING ATTORNEYS' FEES AND COSTS—No. C-00-21034 RMW
AEA

for Fees 2:2), consisting of $75,197.37 charged by Flynn, Delich & Wise ("FDW") (Decl. of James B. Nebel ¶ 18), $57,934.57 charged by TCW Attorneys at Law ("TCW") (Decl. of Jane Y.J. Tseng ¶ 8), and $1,795 in witness travel expenses (Decl. of Lian Wang ¶ 2).

Plaintiff asserts that attorneys and staff at FDW devoted 262.5 hours to matters relating only to the contempt issue and 54.7 hours to matters that included time spent on the contempt issue. (Decl. of James B. Nebel ¶ 5). James Nebel ("Nebel") recorded 295 hours at rates between $225 and $250 per hour. (*Id.* at ¶¶ 6 and 11). In addition to Nebel, a first-year associate recorded approximately nine hours at $160 per hour and a law clerk recorded approximately 12 hours at rates between $125 and $130 per hour. (*Id.* ¶ 11).

Nebel declares that time entries solely related to the contempt motion total $61,112.00 and that if entries related to both the contempt proceeding as well as other subjects are allocated one-third to the contempt proceeding, an additional $4,365.83 should be added. (*Id.* ¶ 16).

Plaintiff also seeks fees of TCW where two partners and two junior associates billed $9,021.96 for the contempt matter in this court. (Ms. Jane Y.J. Tseng's Decl. ¶ 5). TCW also billed $48,912.16 for the action in Taipei District Court in which plaintiff sought to invalidate the purported transfer of a Taiwan patent from K.C. Tsai and PRI to National Energy Technology Co., Ltd. ("NECT"), which was the subject of this court's injunction. (*Id.* at ¶ 6). Although Ms. Tseng's Declaration does not state the number of hours allocated to these matters nor the billing rates of the attorneys who worked on them, it appears that the hourly billing rates for the TCW attorneys are as follows: Ms. Jane Y.J. Tseng at $181.14, Ms. Helen Fang at $115.01, Ms. Rebecca Su at $115.01, and Ms. Grace Wu at $115.01.[2] (Exhibits C and D of Ms. Jane Y. J. Tseng's Decl). Based on these billing rates, if the most expensive attorney billed all of the time, TCW allocated at least 49 hours on the contempt matter and 270 hours on the Taipei District Court matter.[3]

---

[2] This amounts are based on the billing rates set forth in New Taiwan Dollar amounts on TCW's bill converted into U.S. Dollars at the exchange rate of 34.8071 TWD to 1 U.S. Dollar as of February 20, 2009.

[3] Of course, these hours are not accurate and are likely higher as lower billing attorneys also worked on the matters.

ORDER AWARDING ATTORNEYS' FEES AND COSTS—No. C-00-21034 RMW
AEA 2

Finally, plaintiff seeks $1,795.70 in witness travel expenses including: (1) airfare from Taipei to LAX $815; (2) airfare from LAX to San Jose and Hotel Package $455.42; (3) hotel expenses $139.72; (4) car rental $131.5; (5) insurance $54.00 and (6) meals and miscellaneous $200. (Decl. of Lian ("Leo") Wang ¶ 2).

## II.  ANALYSIS

### A.  General Standards for Awarding Attorneys' Fees and Costs

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). "Compensatory awards are limited to 'actual losses *sustained as a result of the contumacy.*'" *Id.* (emphasis in original).

*General Signal Corp.* applies, and plaintiff cites, the twelve factors set out in *Kerr v. Screen Extras Guild,* 525 F.2d 67, 70 (9th Cir. 1975),[4] as the factors to be evaluated in determining whether plaintiff's attorneys' fees arising out of defendants' contemptuous conduct are reasonable. 787 F.2d at 1380. The twelve-factor method, however, has been condensed into the lodestar method of calculating attorneys' fees. *See Yahoo!, Inc., v. Net Games, Inc.,* 329 F.Supp.2d 1179, 1182 (quoting *Gisbrecht v. Barnhart,* 535 U.S. 789, 801). The lodestar method focuses the court's consideration on two factors: the reasonableness of the number of hours and the reasonableness of the hourly rate. Subsumed in the lodestar method are (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; (4) the results obtained and (5) the contingent nature of the fee agreement. *Morales v. City of San Rafael*, 96 F.3d 359, 364 fn9 (9th Cir. 1996). After determining the presumptively reasonable lodestar calculation, the court may adjust the lodestar amount in light of the remaining *Kerr* factors that are not included in the lodestar method. *Id.* at 363-64.

---

[4] These factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Opposition to the number of hours component of the lodestar calculation can be made on the basis of excessive hours, redundant hours, and unnecessary hours. *See* 6 MOORE'S FEDERAL PRACTICE § 26.46 [2] (2007) (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States EPA,* 169 F.3d, 755, 760-62 (D.C. Cir. 1999); *ACLU of Georgia v. Barnes,* 168 F.3d 423, 432-433 (11th Cir. 1999); *Halderman by Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 941-942 (3d Cir. 1995)). As for the appropriate hourly rate component of the lodestar calculation, the standard used is "the market rate for the legal services the attorney rendered that prevails in the relevant geographic community." 6 MOORE'S FEDERAL PRACTICE § 26.46[2] (2007) (citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)).

### B. Travel Expenses Incurred by Witness

Plaintiff seeks $1,795.70 in travel expenses incurred by witness Lian Wang. Plaintiff filed a bill of costs seeking $1296.00 for Mr. Wang which was approved by the clerk of the court. Both parties agree that this cost is appropriately sought by plaintiff. Accordingly, the court includes an additional cost of $499.70 ($1,795.70 - $1296.00) in its award to plaintiff.

### C. Request for Fees and Expenses Incurred by Flynn, Delich & Wise

Plaintiff argues that defendants' opposition was late and should not be considered. Defendants justifiably point out the court's lengthy delay in issuing its contempt order during which time defendants' counsel moved their offices. Defendants assert they responded as quickly as possible. The court will consider defendants' papers because the court's delay contributed to defense counsel's late receipt and there is no indication of prejudice to plaintiff.

Defendants argue that the time spent on the contempt motion was unreasonable because FDW's research spanned over the length of four years and because their work was "excessive" and "repetitive." (Def.'s Opp. 2:9 - 2:19). Defendants assert that time spent on lost profits should not be allowed because lost profits were not an appropriate basis for sanctions and because plaintiff withdrew that claim. (Def.'s Opp. 2:20 - 3:2). Plaintiff responds that it did not do excessive or repetitive work and that the lost profits related work should be included because but for defendants' contemptuous conduct, they would not have asserted that claim. (Pl.'s Reply 5:12 - 5:27).

ORDER AWARDING ATTORNEYS' FEES AND COSTS—No. C-00-21034 RMW
AEA 4

1    Further, defendants contend that plaintiff should not be awarded attorneys' fees for time spent
2    on issues of collateral estoppel and res judicata because it "may apply to the Motion to Confirm the
3    Arbitration Award," which was not contested. (Def.'s Opp. 3:3 - 3:6). Plaintiff assures that this
4    research was allocated to the contempt motion and was the subject of the memorandum that plaintiff
5    submitted at the second day of the evidentiary hearing and was related specifically to the contempt
6    motion. (Pl.'s Reply 6:1 - 6:11).

7    Finally, defendants argue that time spent on plaintiff's "post-submission brief" that was
8    neither requested nor authorized by the court should not be allowed because it was not a reasonable
9    expense. (Def.'s Opp. 3:7 - 3:9). Plaintiff points out that although not requested, this court
10   apparently found the brief helpful, as indicated by the court's contempt order. (Pl.'s Reply 6:12 -
11   6:26).

12   The court finds the hours spent by the FDW firm reasonable. Although some theories FDW
13   considered were dropped or not pursued, the limited time spent on those issues was reasonable.
14   Further, FDW kept good track of the hours spent and services rendered and the court does not
15   identify any services that took excessive hours or were redundant or unnecessary. Nor does the
16   court find any fees claimed that should have been charged to a different proceeding.

17   Defendants contend that $25,000 is the maximum that can be justified for "one motion."
18   Describing this proceeding as one motion is misleading. The "motion" included an evidentiary
19   hearing that took two separate days to complete. It also was a difficult case to understand
20   procedurally because of the foreign aspects and also required the parties to carefully present their
21   cases because credibility played a major role.

22   Defendants do not dispute the reasonableness of counsel's hourly rate. Nebel was a partner at
23   another law firm for ten years before founding FDW in 1993 (Decl. of James B. Nebel ¶ 8), has been
24   recognized as a Northern California "Super Lawyer" by *Law & Politics/ San Francisco Magazine*
25   from 2005 through 2008, and was named in the Maritime Law section of the publication *Best*
26   *Lawyers in America. Id.* at ¶ 18. The court agrees that the hourly rates charged by plaintiffs are
27   reasonable if not low as compared to what is charged by others with similar experience. The court
28

ORDER AWARDING ATTORNEYS' FEES AND COSTS—No. C-00-21034 RMW
AEA                                     5

awards FDW fees and costs in the amount of $71,352.83 which includes $6,875.00 for the preparation of the motion for fees.[5]

### D. Request for Fees Incurred by TCW

#### 1. Contempt Motion

Plaintiff seeks $9,021.96 for TCW's work on the contempt motion. Defendants argue that because the contempt motion was brought by FDW rather than TCW and because TCW was not associated in as counsel of record, its attorneys should not be rewarded for their testimony or work. (Def.'s Opp. 4:7 - 4:13). This contention is not persuasive. A firm can certainly provide needed assistance without becoming attorneys of record. Nor is there any requirement that an attorney be of record to receive part of a fee award.

The court finds TCW's fees and costs allocated to the contempt proceeding to be reasonable in rate and for the services rendered. The court awards fees and costs for TCW's services in the amount of $9,021.96.

#### 2. Taipei District Court Action

Plaintiffs also seek $48,912.61 for TCW's work relating to the Taipei action to invalidate the purported transfer of a Taiwanese patent (covering the disputed intellectual property) from defendants to NETC. Defendants submit that the Taipei action was not part of the contempt proceeding and thus fees incurred by plaintiff for the Taipei action should not be included. Plaintiff responds that it would not have had to pursue NETC in Taiwan were it not for defendants' disregard of the court's injunction. The court does not find that to necessarily be the case. Therefore, only those fees charge by FDW and TCW in connection with the contempt proceeding are awarded.

---

[5] It appears that Mr. Nebel made a mistake in computing FDW's fee request. He appears to add $61,112.00 and $4,365.83 (Decl. of Nebel at ¶ 16) and get a sum of $64,477.83 rather than $65,477.83. The court has used Mr. Nebel's figures, however, as it is possible that Mr. Nebel made a $1,000 error in his calculation of $61,112.00.

ORDER AWARDING ATTORNEYS' FEES AND COSTS—No. C-00-21034 RMW
AEA      6

### III. ORDER

For the foregoing reasons, the court grants plaintiff fees and costs in the total amount of $80,874.49 ($499.70 + $71,352.83 + $9,021.96).

DATED: 07/17/09

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

James Barton Nebel          jamesn@fdw-law.com
Jeanine Steele Tede         jeaninet@fdw-law.com
John H. Ferguson            johnf@fdw-law.com

**Counsel for Defendants:**

Frank Helge Russow
John Joseph Wall, Jr.       jwalljr@pacbell.net

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     07/18/09                              JAS
                                              **Chambers of Judge Whyte**